```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE        *    MDL Docket No. 2004
                                      4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS    *
                                      Case Nos.
LIABILITY LITIGATION             *    4:12-cv-167 (Marker)
_____
```

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Wendy Marker was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Mrs. Marker brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Mrs. Marker also contends that Mentor did not adequately warn her physicians about the risks associated with ObTape. Her husband Douglas asserts a loss of consortium claim. Mentor argues that the Markers' claims are time-barred. For the reasons set forth below, the Court agrees, and Mentor's summary judgment motion (ECF No. 61 in 4:12-cv-167) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material*

fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Mrs. Marker was diagnosed with stress urinary incontinence. After consulting with Dr. Edmond Fitzgerald, Mrs. Marker decided to have an ObTape implant procedure. Dr. Fitzgerald implanted Mrs. Marker with ObTape on July 29, 2004. In 2005, Mrs. Marker began to experience vaginal discharge with odor and dyspareunia. In 2008, one of Mrs. Marker's doctors found that her ObTape was exposed through the vaginal wall and referred her to Dr. Anthony Moorman. Dr. Moorman discussed the erosion with Mrs. Marker, advised her to have a revision surgery, and told her that part of her sling may need to be removed.[1]  Moorman Dep. 79:24-80:6, 81:19-82:7, ECF No. 61-6 in 4:12-cv-167.

Dr. Moorman performed a revision surgery in October 2008 and removed a portion of Mrs. Marker's ObTape. Dr. Moorman told Mrs.

---

[1] Mrs. Marker disputes Dr. Moorman's testimony because she does not recall what he told her about the reason for her revision surgery. She did not point to any evidence to create a genuine fact dispute on this point.

2

Marker that he had "removed something" from her body during the surgery. Marker Dep. 108:15-20, ECF No. 61-4 in 4:12-cv-167. Mrs. Marker does not recall if Dr. Moorman told her that he removed part of the sling, and she did not ask. *Id.* at 108:18-23.

Mrs. Marker's symptoms did not improve, so she visited Dr. Marcus Ellerkmann. Dr. Ellerkmann discovered a "vaginal defect . . . suggestive of suburethral sling mesh erosion." Ellerkmann Dep. 53:12-21, ECF No. 61-7 in 4:12-cv-167. Dr. Ellerkmann shared that information with Mrs. Marker and told her that she needed to undergo surgery to remove more of the ObTape and repair her vaginal wall.[2] *Id.* at 53:22-55:8. Dr. Ellerkmann also told Mrs. Marker that he would try to remove as much of the sling as possible and that the sling was responsible for her granulation tissue.[3] *Id.* at 154:18-155:8. Dr. Ellerkmann performed a revision surgery on February 18, 2009. He attempted to remove as much of the ObTape and granulation tissue as he could. Mrs. Marker underwent three additional revision surgeries to remove more of her ObTape. In September 2009, Dr. Ellerkmann told Mrs. Marker that the sling she received in 2004 was ObTape and that it had been recalled.

---

[2] Mrs. Marker disputes Dr. Ellerkmann's testimony because she does not recall him telling her that her sling had eroded through her vaginal wall. She does recall that he used words like "granulation" and "erosion," and she recalls that he told her there was a hole in her vaginal wall from the sling. Marker Dep. 113:12-23.

[3] Again, Mrs. Marker disputes Dr. Ellerkmann's testimony because she does not recall what he told her about the reasons for her surgery except that he told her there was a hole in her vaginal wall from the sling. Marker Dep. 113:12-23.

The Markers are Maryland residents, and all of Mrs. Marker's ObTape-related treatment took place in Maryland. Mrs. Marker asserts claims for negligence, design defect, manufacturing defect, failure to warn, breach of express warranty, and breach of implied warranty. Mr. Marker asserts a loss of consortium claim.

## DISCUSSION

The Markers filed their action in this Court on July 5, 2012 under the Court's direct filing order. The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint." Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004. The parties agree that Maryland law, including its statutes of limitation, apply to the Markers' claims because the Markers are Maryland residents and all of Mrs. Marker's medical treatment relevant to this action occurred in Maryland.

## I.   Negligence and Strict Liability Claims

Under Maryland law, "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West). Maryland's discovery rule provides that "the cause of action accrues when the wrong is discovered or when with due diligence it should have been discovered." *Poffenberger*

4

*v. Risser*, 431 A.2d 677, 679 (Md. 1981). "[A] cause of action for a plaintiff in a medical products liability action would accrue when he knew or should have known (1) he suffered injury; (2) the injury was caused by the defendant; and (3) there was manufacturer wrongdoing or a product defect." *Pennwalt Corp. v. Nasios*, 550 A.2d 1155, 1167 (Md. 1988).

The discovery rule "contemplates actual knowledge that is express cognition, or awareness implied from knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus, charging the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued." *Poffenberger*, 431 A.2d at 681; *accord Anne Arundel Cty. v. Halle Dev., Inc.*, 971 A.2d 214, 228 (Md. 2009). "Because implied actual knowledge is sufficient to start the limitations period, courts consider the three years to begin when a plaintiff is on inquiry notice." *Quillin v. C.B. Fleet Holding Co.*, 328 F. App'x 195, 198 (4th Cir. 2009) (per curiam) (applying Maryland law). "Inquiry notice arises when a plaintiff gains knowledge sufficient to prompt a reasonable person to inquire further.'" *Id.* (quoting *Pennwalt*, 550 A.2d at 1163). "In other words, a purchaser cannot fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him; and if he neglects to make such inquiry, he will be held guilty of bad faith and must

5

suffer from his neglect. *Poffenberger*, 431 A.2d at 681; *accord Pennwalt Corp.*, 550 A.2d at 1163 ("[L]imitations begin to run when a plaintiff gains knowledge sufficient to prompt a reasonable person to inquire further.").

In summary, "limitations begin to run when a claimant gains knowledge sufficient to put her on inquiry." *Lutheran Hosp. of Md. v. Levy*, 482 A.2d 23, 27 (Md. Ct. Spec. App. 1984). "As of that date, she is charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation. The beginning of limitations is not postponed until the end of an additional period deemed reasonable for making the investigation." *Id.* And, if a party asserts that the defendant fraudulently concealed its wrongdoing, she still "must have exercised ordinary diligence to protect her rights." *Id.* at 30.

Two Maryland state court cases and one Fourth Circuit case applying Maryland law are instructive. In *Levy*, the plaintiff had a broken ankle that was not treated correctly in 1973. She claimed that her malpractice cause of action did not accrue until 1977, when her new doctor saw the 1973 x-rays and opined that the doctor who initially treated the ankle committed malpractice. But the Maryland Court of Special Appeals concluded that the plaintiff's action accrued in 1974 because she knew "something wrong had been done" based on a 1974 consultation with a different doctor. *Levy*, 482 A.2d at 27. At that time, the plaintiff had

6

"knowledge of circumstances which ought to have put [her] on inquiry [thus charging her] with notice of all facts which such an investigation would have disclosed if it had been properly pursued." *Id.* (alterations in original) (quoting *Poffenberger*, 431 A.2d at 681). The Maryland court rejected the plaintiff's argument that her cause of action did not accrue until an expert opined that her injury resulted from malpractice; rather, it accrued when the plaintiff became aware that she was injured and that "something wrong had been done." *Id.* at 29.

In *Quillin*, the plaintiff took two doses of a laxative in preparation for a routine colonoscopy. Soon after that, he became ill and went to the hospital, where he told the admitting doctors that "he had taken a significant amount of laxatives prior to his colonoscopy and that he thought they may have dried him out." *Quillin*, 328 F. App'x at 197. The plaintiff was diagnosed with renal failure, and his doctors noted that the renal failure was probably related to the laxative and other drugs he had taken. The plaintiff did not investigate the cause of his injury, but he brought suit after he read a newspaper article suggesting a connection between the laxative he took and kidney failure. The Fourth Circuit concluded that the statute of limitations began to run when the plaintiff was diagnosed with renal failure shortly after ingesting the laxative because he "had sufficient information to know that he had suffered an injury and that [the

7

defendant's] product may have been a cause of the injury." *Id.* at 200. At that time, "a reasonable person would have undertaken an investigation into" the cause of the injury. *Id.* "The fact that [the plaintiff] may not have been certain that his injury was a result of his ingestion of [the laxative] did not free him from the obligation to investigate the cause of his injury if he was reasonably on notice that some wrongdoing may have occurred." *Id.*

In contrast, in *Baysinger v. Schmid Products Co.*, 514 A.2d 1, 4 (Md. 1986), the Maryland Court of Appeals found a fact question on when the plaintiff had inquiry notice that her injuries were caused by the defendant's intrauterine device. In *Baysinger*, the plaintiff had a severe infection that she suspected was caused by her intrauterine device, so she asked her doctor about her suspicion. The doctor said he had "no way of determining whether her infection was caused by the [device] or by some other unrelated occurrence or instrumentality." *Id.* She asked another doctor about her suspicions, and that doctor likewise "had no idea of what caused her illness," so further investigation with that doctor "would have been fruitless." *Id.* In other words, the plaintiff attempted to investigate her claims by asking her doctors if there was a connection between the defendant's product and her injuries. The doctors responded that they did not know what caused her injuries, and the Maryland Court of Appeals concluded that a fact question existed on whether "a reasonably

8

prudent person should then have undertaken a further investigation." *Id.*

Mrs. Marker argues that her claims did not accrue until Dr. Ellerkmann told her in September 2009 that ObTape had been recalled. This argument is quite similar to the plaintiff's argument in *Levy*, which was rejected. A plaintiff can be on inquiry notice without an expert's opinion regarding her claims. *Levy*, 482 A.2d at 27. Here, Mrs. Marker knew in October 2008 that she had to have a revision surgery and that Dr. Moorman "removed something" from her body during that surgery. Although Mrs. Marker does not recall a discussion with Dr. Moorman about the reason for her revision surgery, Dr. Moorman told her that the surgery was related to the erosion of her sling and that part of her sling may need to be removed. At that time, Mrs. Marker had an obligation to investigate the cause of her injury. Even if there was a genuine fact dispute about whether Dr. Moorman told Mrs. Marker that the surgery was related to an erosion of her ObTape, that would not change the Court's conclusion. A reasonable person in Mrs. Marker's circumstances would at least ask (1) why she needed to have surgery and (2) what the doctor removed from her body and why. There is no evidence that anything prevented Mrs. Marker from asking Dr. Moorman questions about the surgery, the reasons for it, or the results.

Mrs. Marker also knew in February 2009 that she had to undergo an additional revision surgery. She admits that Dr. Ellerkmann told her about an erosion and that there was a hole in her vaginal wall from the sling. During that revision surgery, Dr. Ellerkmann tried to remove as much of the ObTape as he could. There is no evidence that anything prevented Mrs. Marker from asking Dr. Ellerkmann questions about the surgery, the reasons for it, or the results.

In summary, Mrs. Marker knew or should have known by February 2009 at the absolute latest that there was a connection between her sling and her injuries. Her doctors told her in October 2008 and February 2009 that she needed to have surgery because her ObTape had eroded through her vaginal wall. Although Mrs. Marker does not recall those conversations (and therefore appears to deny that they happened), a reasonable person undergoing invasive surgery would certainly ask her doctor why she needed the surgery. If Mrs. Marker had asked, her doctors would have told her the surgery was necessary to treat an erosion of ObTape. At that point, Mrs. Marker had a duty under Maryland law to investigate the potential causal connection between ObTape and her injuries. A reasonable person in her situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other problem. But Mrs. Marker

10

pointed to no evidence that she took any action to investigate her potential claims even though she knew (or certainly should have known) by February 2009 at the latest that there was a connection between her injuries and the ObTape.

This case is not like *Baysinger*, where the plaintiff asked her doctors if there could be a connection between the defendant's product and her injuries but the doctors told her they did not know. *Baysinger*, 514 A.2d at 4. Unlike the plaintiff in *Baysinger*, Mrs. Marker did nothing to investigate her claims even though she had sufficient information to require an investigation. Mrs. Marker had inquiry notice by February 2009 at the latest, so that is when the statute of limitations for her negligence and strict liability claims began to run. Mrs. Marker did not file this action within three years, so her negligence and strict liability claims are time-barred.

## II. Warranty Claims

Mentor also contends that Mrs. Marker's warranty claims are time-barred. Mrs. Marker did not respond to this argument. Maryland has a four-year statute of limitations for warranty claims. Md. Code Ann., Com. Law § 2-725(1) (West); *Youmans v. Douron, Inc.*, 65 A.3d 185, 194 (Md. Ct. Spec. App. 2013). "A breach of warranty occurs when tender of delivery is made" unless the warranty "explicitly extends to future performance of the goods." Md. Ann. Code Commercial Law § 2-725(2). To be timely, a

11

warranty action must be brought within four years after delivery of the product. *Youmans*, 65 A.3d at 194. Mrs. Marker's ObTape was delivered on July 29, 2004. She did not bring her action within four years, so her warranty claims are time-barred.

### III. Loss of Consortium Claim

Mr. Marker's loss of consortium claim is derivative of Mrs. Marker's claims; because her underlying claims fail, his loss of consortium claim also fails. *Oaks v. Connors*, 660 A.2d 423, 430 (Md. 1995) (holding that "a loss of consortium claim is derivative of the injured spouse's claim for personal injury").

### CONCLUSION

As discussed above, the Markers' claims are time-barred, and Mentor's summary judgment motion (ECF No. 61 in 4:12-cv-167) is granted.

IT IS SO ORDERED, this 2nd day of March, 2016.

s/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA